IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DR. DAN E. HALE, *individually, and for Cardinal Revocable Trust*, DON HALE, *individually, and as Trustee for the* HRC MEDICAL DEFINED BENEFIT PLAN,

    Plaintiffs.

v.

STATE OF TENNESSEE, et al.,

    Defendants.

NO. 3:14-cv-2194
JUDGE RICHARDSON

# MEMORANDUM OPINION

Pending before the Court are two motions. Defendants have filed a Second Motion to Dismiss (Doc. No. 72, "Motion"). Plaintiffs have responded. (Doc. No. 76, "Response"). Defendants have replied. (Doc. No. 77). Also pending before the Court is Plaintiffs' Motion for a Hearing regarding Defendants' Motion (Doc. No. 79, "Motion for a Hearing"). Defendants have responded. (Doc. No. 80). Plaintiffs did not reply. Both motions are ripe for review.

For the reasons discussed herein, the Court will grant Defendants' Motion. The Court will deny Plaintiffs' Motion for a Hearing.

1

## BACKGROUND

A. <u>Factual Background</u>[1]

Plaintiffs Dan Hale and Don Hale are brothers and the sole shareholders in HRC Medical Centers, Inc. ("HRC"), a Tennessee corporation that offers bio-identical hormone replacement therapy.[2] (Doc. No. 1 at ¶ II. A). HRC allegedly maintains an ERISA-governed defined benefit plan (the "Plan"). (*Id.* at ¶ II. B). In October 2012, Defendant Commissioner of Commerce and Insurance, through the office of the Attorney General of the State of Tennessee ("the State"), instituted an action in state court against HRC asserting that the company violated the Tennessee Consumer Protection Act through various misrepresentations in its clinical marketing practices. (*Id.*). Pursuant to that state-court action, the State sought an order to appoint a *pendente lite* Receiver for the purpose of marshalling and controlling all assets of HRC and its subsidiaries. (*Id.* at ¶ II. C). The Davidson County Circuit Court appointed John McLemore as receiver for HRC's assets. (*Id.* at ¶ II. E). In the course of his duties as receiver, McLemore attempted to pursue and close Account Number 7361749166 at Fifth Third Bank, HRC's account for the allegedly ERISA-governed defined benefits Plan. (*Id.* at ¶ II. H). On July 23, 2013, McLemore withdrew $646,027.24 from this account, and the State has declined demands to have these funds returned. (*Id.* at ¶ II. I).

---

[1] These facts are taken from the Complaint. (Doc. No. 1). As will be discussed, because this is a factual attack on subject matter jurisdiction, the Court does not have to accept the facts as stated in the Complaint as true. However, it does not appear that the parties dispute any of the relevant facts. Notably, the allegation that the Plan is governed by ERISA is ultimately an allegation of law rather than of fact, and so the Court treats that allegation as alleged only and not as true.

[2] Plaintiff Dan Hale owns his shares of HRC through the Cardinal Revocable Trust of which he is the named beneficiary. (Doc. No. 1 at ¶ II. A).

2

B. Procedural Posture

On April 30, 2014, Plaintiffs Dan Hale and Don Hale (in their individual capacities) and several companies (HRC Medical Center Holdings, LLC; HRC Management, LLC; and HRC Medical Centers, Inc.) filed complaints in the Tennessee Claims Commission seeking damages based on the unlawful taking of Plaintiffs' private property and assets by McLemore. (Doc. No. 24-7). Then, Plaintiffs[3] filed the Complaint in the instant case on November 12, 2014. (Doc. No. 1).

On May 15, 2015, three dispositive motions were filed in this case: (then Defendant) McLemore filed a motion to dismiss, (Doc. No. 19); the State Defendants[4] filed a motion to dismiss, (Doc. No. 22); and Plaintiffs filed a motion for judgment on the pleadings, (Doc. No. 21). On February 9, 2016, the Court, invoking the *Younger* abstention doctrine, denied the motions without prejudice and administratively closed the case without prejudice pending exhaustion of state remedies. (Doc. No. 47).

On May 6, 2020, Plaintiffs filed a status report with the Court informing it that "the resolution of the state court issues now preempts and concludes most of the issues that could have remained viable in the above-captioned matter if there had been a contrary result in the state appellate proceedings." (Doc. No. 61 at 1). As Plaintiffs explained, without referring to the TCC proceedings at all, the state-court case (in which Plaintiffs were the defendants) had been finally resolved, through the entirety of the state appellate process. In this filing, Plaintiffs also moved

---

[3] Plaintiff Dan Hale sued both individually and as the beneficiary of the Cardinal Revocable Trust. (Doc. No. 1 at ¶ I. A). Plaintiff Don Hale sued both individually and as Trustee for the HRC Medical Defined Benefit Plan. (*Id.*).

[4] "State Defendants" refers to Defendants State of Tennessee, the Attorney General of the State of Tennessee, and Commissioner of Commerce and Insurance collectively.

3

that the case before the Court be reinstated to address the one remaining issue: Plaintiffs' ERISA-based claim for declaratory relief. (*Id.*). The Court granted Plaintiffs' motion and reinstated the case on the Court's active docket. (Doc. No. 62). On June 3, 2020, Plaintiffs filed an amended partial motion to dismiss with prejudice their claims now barred by res judicata following final state court rulings arising from the same facts. (Doc. No. 68).[5] The Court granted Plaintiffs' motion to dismiss the same day. (Doc. No. 70). Specifically, the Court dismissed with prejudice: (1) all claims against Defendant McLemore; (2) all claims against Defendant McPeak,[6] Commissioner of Commerce and Insurance; (3) all claims for injunctive relief and attorneys' fees and costs, as set forth in Paragraph III. B. of the Complaint; and (4) all claims for damages, as set forth in Paragraph III. C. of the Complaint. (*Id.*). After this order, the single issue remaining before the Court is Plaintiffs' petition for declaratory relief related to the allegedly ERISA-governed Plan. (*Id.*).

Therefore, the sum result of all of these filings is that currently before the Court is one issue, declaratory relief related to the ERISA claim, against remaining State Defendants: the State of Tennessee, Herbert H. Slatery, III (attorney general and reporter), and Hogden Mainda (in his official capacity as Commissioner of Commerce and Insurance). This declaratory relief makes up Count A of the Complaint, and is phrased as thus:

> **<u>Enforcement of Applicable ERISA Statutes.</u>** Plaintiffs seek from the Court a finding that the HRC Medical Defined Benefit Plan remains a viable defined benefit plan, which must be governed by the provisions of 29 U.S.C. § 1144, et seq. In furtherance of that finding, Plaintiffs seek entry of an order compelling that the state court Receiver deposit with the Trustee of the plan the entirety of the fund of

---

[5] Plaintiffs had to file an amended motion because their original partial motion to dismiss (Doc. No. 67) did not comply with Local Rule 5.01 by failing to include all Counsel on the certificate of service. Correction of this error was the only change in the amended motion.

[6] Defendant McPeak was replaced as a Defendant by the Current Commissioner of Commerce and Insurance, Hogden Mainda. (Doc. No. 71).

> $646,027.74, to be placed in a FDIC insured bank so that it may be administered for the benefit of the plan beneficiaries. Plaintiffs further seek a finding from the Court that the removal of the ERISA-governed funds by the Receiver, in contravention of the applicable federal statutes and regulations, constitute a breach of fiduciary duty, and that the damages, penalties and sanctions set forth in 29 U.S.C. § 1132(c) may be assessed to the Commissioner and her Receiver, including the $100.00 per day penalty.

(Doc. No. 1 at 10).

On July 7, 2020, State Defendants filed the instant Motion. (Doc. No. 72). In addition to filing a Response to the Motion (Doc. No. 76), Plaintiffs also requested a hearing regarding Defendants' Motion. (Doc. No. 79).

**LEGAL STANDARD**

Defendants move to have this matter dismissed pursuant to Rule 12(b)(1) and Rule 12(b)(6), on the sole basis that Plaintiffs have waived their remaining federal claim via their filing of the TCC action. Defendants seem to argue primarily for dismissal under Rule 12(b)(1) on the grounds that this Court lacks subject-matter jurisdiction. (Doc. No. 73 at 5). Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).

As the Court should resolve a challenge to subject-matter jurisdiction before it makes any decisions on the merits—which could include, for example, granting dismissal under Rule 12(b)(6)—the Court proceeds first with an analysis under Rule 12(b)(1).[7] The Court is not entirely

---

[7] The Court notes that if instead it treated the Motion primarily or exclusively as one under 12(b)(6)—on which all factual allegations are assumed to be true— it would not reach a different outcome regarding dismissal, as the Court's conclusion under Rule 12(b)(1) does not entail the rejection of any factual contention in the Complaint. Indeed, the only facts at issue that truly matter on the instant Motion—the ones that determine whether Plaintiffs via their TCC claim have waived their remaining claim herein—are those concerning what Plaintiffs were *claiming* in the TCC action vis-à-vis what they are claiming in their sole remaining count in the instant action; the *truth*

5

convinced of the validity of the proposition that a plaintiff's waiver of a federal claim operates to deprive the Court of subject-matter jurisdiction (as opposed to dooming the claim on some merits-based or other non-jurisdictional basis). But Plaintiffs do not contest this proposition, arguing instead that there was no waiver without asserting that the consequences of waiver would not include evisceration of subject-matter jurisdiction in particular. And some, albeit not all, cases finding waiver of federal claims based on the prior filing of a TCC claim have indeed treated the waiver as grounds for dismissal based on lack of subject-matter jurisdiction. *See Waddle v. Comm'r, Tennessee Dep't of Correction*, No. 3:15-01309, 2017 WL 6442143, at *3 (M.D. Tenn. Dec. 15, 2017); *Eachus v. Haslam*, No. 3:15-CV-944, 2016 WL 323675, at *4 (M.D. Tenn. Jan. 27, 2016); *Mirabella v. Univ. of Tennessee*, 915 F. Supp. 925, 926 (E.D. Tenn. 1994).

---

of what Plaintiff is claiming is not at issue. In this regard, the Court concludes that those facts can be considered on a Rule 12(b)(6) motion because they are discernible from public records cited by Defendants and filed on the docket of this case. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

On the other hand, by dismissing under Rule 12(b)(6), the Court's treatment would be substantially different—in form if not in ultimate effect— in that a dismissal under Rule 12(b)(1) is necessarily without prejudice while a dismissal under Rule 12(b)(6) is generally on the merits and thus often ordered with prejudice. So if anything, Plaintiffs fare better here because the Court has chosen to proceed under Rule 12(b)(1) rather than Rule 12(b)(6). The Court notes, however, that the dismissal being without prejudice may help Plaintiffs less than it helps some plaintiffs who likewise suffer dismissal without prejudice; unlike some dismissals without prejudice ordered by this Court, this dismissal without prejudice here does *not* portend that a new complaint in this Court could prove to be more successful than the one that had been dismissed without prejudice. All of which is to say that the dismissal, being under Rule 12(b)(1), is without prejudice, but that may be cold comfort to Plaintiffs to the extent that they would wish to try again in this Court. Ultimately, however, the Court does not opine on the consequences of the dismissal being without prejudice and appropriately declines to make any suggestion as to what Plaintiffs should or should not do in response to this dismissal without prejudice.

6

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial attacks and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish federally-cognizable claims, jurisdiction exists. *Id.* A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.* Defendants here lodge a factual attack on subject matter jurisdiction, as they are asserting that Plaintiffs have waived the remaining claim in the Complaint and that therefore the Court lacks subject-matter jurisdiction. *Eachus*, 2016 WL 323675, at *4. Notably, the factual disputes relevant to the attack are not regarding the veracity of the allegations of the Complaint, but rather are regarding extra-Complaint facts concerning whether Plaintiffs have waived the remaining claim.

Where there is a factual attack on the subject-matter jurisdiction of the Court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the Court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Gentek Bldg. Products, Inc.*, 491 F.3d at 330. Again, however, there appears to be no dispute over the truthfulness of the Complaint's factual allegations, and the instant dispute (regarding *waiver* of Plaintiffs' remaining claim) does not turn of the veracity of those allegations anyway; it turns instead on a comparison of the remaining claim here with the claims filed in the TCC action and upon various other circumstances and factors having nothing to do with the truth of the allegations underlying Plaintiffs' remaining claim.

In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. *Id.*; *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003); *Cunningham v. Rapid Response Monitoring*

7

*Servs., Inc.*, 251 F. Supp. 3d 1187, 1192 (M.D. Tenn. 2017). As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction exists. *Global Technology, Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015); *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005).

**DISCUSSION**

The Court will first discuss Plaintiffs' Motion for a Hearing, before turning to the arguments in Defendants' Motion.

A. <u>Plaintiffs' Motion for a Hearing</u>

Plaintiffs have moved this Court for a hearing (which they refer to as oral argument) to address the issues presented in the current Motion. Plaintiffs explain their request for a hearing as follows:

> Oral argument on the issue will be helpful. Defendant's reply brief rehashes only broad conclusions asserted in its original motion and literally does not address, to any extent, the fundamental points addressed in Plaintiff's response . . . Not a single case appears in either of the memoranda filed on behalf of the State which may be described as legally or factually comparable to the present case.

(Doc. No. 79 at 2-3). The Court does not find that a hearing would be helpful to the resolution of this Motion. Though Plaintiffs are correct that Defendants have not cited any case law exactly on-point, neither have Plaintiffs. As will be discussed, the Court is aware of no case law involving whether an ERISA claim should be barred after the plaintiffs have sought a remedy from the state claims commission, and the Court must apply relevant (even if not exactly on-point) case law to reach its decision.

As noted above, in considering a factual attack on subject matter jurisdiction, the Court has wide discretion to hold an evidentiary hearing to resolve jurisdictional facts. However, this does not seem to be Plaintiffs' request, as Plaintiffs request a hearing in which they can argue the law

8

(not present facts). Neither party has indicated that the Court would benefit from an evidentiary hearing to resolve the current Motion.

Therefore, the Court will deny Plaintiffs' Motion for a Hearing.

B. Defendants' Motion

Defendants argue that this matter arises from the same acts as does Plaintiffs' TCC claim and that the Court should therefore dismiss the matter for lack of jurisdiction. (Doc. No. 73). In response, Plaintiffs argue that the claims commission does not have jurisdiction over an ERISA claim, and so Plaintiffs should be able to bring their ERISA claim in federal court.[8] (Doc. No. 76). The parties do not seem to dispute that the claim brought before the claims commission and the present matter arise out of the same acts or omissions.[9]

    1. *The Tennessee Claims Commission Act*

---

[8] Plaintiffs also make several unsupported arguments that the Court finds unavailing. Plaintiffs argue that there is not a complete identity of the parties between this action and the TCC action. The Court is unpersuaded by this argument because Plaintiffs cite no case law in support or otherwise explain why identical parties would be required.

[9] Plaintiffs do seem to argue at various points in their Response that because of a nonalienation clause in the Plan, the ERISA Plan funds (at issue in the instant case) were somehow distinguishable from the money contained in the account when the account was taken by the receiver (at issue in the TCC case). (Doc. No. 76). However, Plaintiffs state that "the State Receiver has wrongly exercised possessory control over a fund in which it has no rights and which it has no business 'possessing.'" (*Id.* at 11). Plaintiffs do not assert that this "possessing" of the account (which underlies their remaining claim in this action) is not based on the same acts underlying their TCC claim. Plaintiffs also assert that the ERISA claim was never presented to the TCC, as the TCC claim focused on different legal causes of action. (*Id.* at 12). However, "the state and federal actions [do not] 'have to share the same legal or theoretical foundation,' and a claim is waived when the same 'acts' by the defendants form the basis of the claim before the TCC and a claim before another court." *Eachus v. Haslam*, No. 3:15-CV-944, 2016 WL 323675, at *5 (M.D. Tenn. Jan. 27, 2016) (quoting *Thomson v. Harmony*, 65 F.3d 1314, 1319 (6th Cir. 1995)). If Plaintiffs did contest that the current action and the TCC action were based on the same acts, the Court in any event would find them to be based on the same acts, as the two actions are both predicated on particular actions of the receiver (taking private property from Plaintiffs), as discussed in more detail in the Factual Background section.

9

The Tennessee Claims Commission Act ("TCC Act") provides persons with the opportunity to file, with the Tennessee Claims Commission ("TCC"), causes of action for monetary damages against the state—claims that plaintiffs are not otherwise able to pursue in federal or state courts because of sovereign immunity. Tenn. Code Ann. § 9-8-301, *et seq.*; *Eachus*, 2016 WL 323675, at *5. In filing a claim with the TCC, a claimant in exchange waives her right to any cause of action based on the same act or omission that the claimant has against any state officer or employee. *Id.*; Tenn. Code Ann. § 9-8-307(b). Specifically, the TCC Act provides:

> (b) Claims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee. The waiver is void if the commission determines the act or omission was not within the scope of the officer's or employee's office or employment.

Tenn. Code Ann. § 9-8-307(b). Thus, the sole exception to this waiver applies if the TCC determines that the act or omission "was not within the scope of the officer's or employee's office or employment." *Id.*; *Waddle v. Comm'r, Tenn. Dep't of Correction*, No. 3:15-01309, 2017 WL 6442143, at *3 (M.D. Tenn. Dec. 15, 2017). No party has asserted that the exception applies here.

The TCC Act waives the state's sovereign immunity and provides claimants with a cause of action and a deep pocket that they would not otherwise be able to pursue. In exchange for this waiver, the TCC Act imposes a strict election-of-remedies requirement. *Mullins v. Hall*, No. 10-0966, 2011 WL 2618557, at * 2 (M.D. Tenn. July 1, 2011) (citing *Haley v. Univ. of Tenn.—Knoxville*, 188 S.W.3d 518, 524 (Tenn. 2006)). In *Haley*, the Tennessee Supreme Court held that the filing of a claim with the TCC waives all other causes of action against any state officer or employee based on the same act or omission, even if the claim with the TCC is later withdrawn or voluntarily non-suited. *Haley*, 188 S.W.3d at 524.

As various courts have noted, The Sixth Circuit has read the waiver provision in Tenn. Code Ann. § 9-8-307(b) broadly. *See Setayesh v. Tydings*, No. 3:18-CV-00335, 2019 WL 1460882, at *5 (M.D. Tenn. Apr. 2, 2019) (Richardson, J.); *Mullins v. Hall*, No. 10-0966, 2011 WL 2618557 at *3 (M.D. Tenn. July 1, 2011) (citing *White v. Gerbitz*, 860 F.2d 661, 664 (6th Cir. 1988)); *Johnson v. Tennessee*, No. 220CV02581TLPATC, 2021 WL 1823115, at *5 (W.D. Tenn. May 6, 2021). For example, the Sixth Circuit has held that filing the TCC claim activates the waiver, regardless of the subsequent disposition of the claim. *See Mullins*, 2011 WL 2618557 at *5, and on appeal, *Mullins v. Hall*, 470 F. App'x 476, 477 (6th Cir. 2012); *see also Haley*, 188 S. W. 3d at 524.

2. *Waiver of related federal claims*

Both parties agree that Plaintiffs' ERISA claim is subject to exclusive federal jurisdiction. Defendants argue that even though the TCC would not have had subject matter jurisdiction over Plaintiffs' ERISA claim, Plaintiffs have waived their right to pursue that remedy in this Court by previously filing a claim in the TCC based on the same acts. (Doc. No. 73). Plaintiffs argue that they should be allowed to bring their ERISA claim in this Court because the TCC would have lacked subject-matter jurisdiction to hear such a claim. (Doc. No. 76). Neither party points the Court to any case law specifically regarding waiver of an ERISA (or any other exclusively federal) claim under the TCC Act or other relevant statutes. After an independent review, the Court is also aware of no such case law. However, relevant case law indicates to the Court that such an ERISA claim, even though exclusively federal in nature, is waived by filing with the TCC.

The Sixth Circuit has indicated that filing with the TCC waives any corresponding federal causes of action. *Stamps v. Matthews*, No. 97-5332, 1998 WL 57482, at *1 (6th Cir. Feb. 3, 1998) (finding waiver of federal cause of action); *White v. Gerbitz*, 860 F.2d 661, 662 (6th Cir. 1988)

11

(noting that when a plaintiff elects to sue the state before the TCC, plaintiff waives any "cognate"[10] federal cause of action); *Hicks v. Norris*, No. 89-5939, 1990 WL 61171, at *1 (6th Cir. May 10, 1990) ("Where [plaintiff] elected to sue the defendants in the Tennessee Claims Commission for damages as a result of the tight-fitting leg irons, Tenn. Code Ann. § 9–8–307(b) mandates a complete waiver of any companion federal cause of action against individual state officers or employees."); *see also Bryant-Bruce v. Vanderbilt Univ., Inc.*, 974 F. Supp. 1127, 1136 (M.D. Tenn. 1997) ("Although the Sixth Circuit is not entirely clear, the Court finds that, based on Sixth Circuit precedent, the most reasonable interpretation of the Tennessee statute is that filing a claim in the Tennessee Claims Commission waives all federal causes arising from the same facts against employees of the state."); *Johnson v. Tennessee*, No. 220CV02581TLPATC, 2021 WL 1823115, at *5 (W.D. Tenn. May 6, 2021) (collecting cases and stating "[i]t has explained that the provision requires waiver of any similar 'federal cause of action.'" (quoting *White*, 860 F.2d at 662)). The Sixth Circuit has also found on multiple occasions that filing with the TCC waives corresponding § 1983 claims in federal court. *Laude v. Knowles*, 549 F. App'x 311, 313 (6th Cir. 2013); *Mullins v. Hall*, 470 F. App'x 476, 477 (6th Cir. 2012); *White*, 860 F.2d at 662; *see also Johnson*, 2021 WL 1823115, at *4.

On several occasions, Sixth Circuit judges have written separately from the majority to express concerns over waiver of corresponding federal causes of action. For example, in her concurrence in *Laude*, Judge Stranch agreed with the holding of the majority but wrote separately to articulate that she would have reversed the below decision if the judges were writing on a clean slate, explaining that she found the current reading of the TCC Act too expansive:

---

[10] The Court interprets the word "cognate," in accordance with dictionary sources, to mean "similar in nature."

> Based upon Tenn. Code Ann. § 9–8–307(b), we have held that the filing of a claim for damages against the State with the Tennessee Claims Commission automatically and irrevocably waives a plaintiff's right to file any other legal action arising out of the same facts, including a suit in federal court under 42 U.S.C. § 1983 to recover damages for the violation of federal constitutional rights. *See White v. Gerbitz*, 860 F.2d 661 (6th Cir.1988); *Mullins v. Hall*, 470 Fed. Appx. 476 (6th Cir. 2012). *White* followed *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946 (6th Cir. 1987) (en banc), where a majority of the judges on this court held that a similar Ohio statute effectuated a waiver of federal rights.
>
> Although I am required to follow the law of our circuit, I do not have to agree with all of it. The Supremacy Clause does not permit subordination of federal constitutional rights—and the means to enforce them in federal court through a § 1983 action—to a state claims commission lacking "jurisdiction over any intentional torts." *See Shell v. State*, 893 S.W.2d 416, 421 (Tenn.1995). My views align with the dissenting opinions in *Leaman*, *White*, and *Drew v. U.T. Reg'l Med. Ctr. Hosp.*, 121 F.3d 707, 1997 WL 441752 (6th Cir.1997) (per curiam), and the unanimous opinions in *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453 (6th Cir.1998), and *Kajfasz v. Haviland*, 55 Fed. Appx. 719 (6th Cir.2003).

*Laude*, 549 F. App'x at 314 (Stranch, J., concurring); *White*, 860 F.2d at 665 (Jones, J., concurring in part and dissenting in part) ("Because today's decision further 'exalts a state waiver provision above a plaintiff's right to seek relief for unconstitutional acts,' I respectfully dissent). In other words, even circuit judges who disapprove of the recognition of this kind of waiver (believing that it is inconsistent with the Supremacy Clause) have acknowledged that the Sixth Circuit indeed recognizes it. In decrying the sweeping expanse of the TCC Act, these non-majority opinions confirm that the Sixth Circuit's binding cases have found federal causes of action waived when a plaintiff elected to proceed before the TCC despite concerns raised by concurring and/or dissenting opinions. And this Court long ago acknowledged this Sixth Circuit's embrace of this kind of waiver. *See Bryant-Bruce v. Vanderbilt Univ., Inc.*, 974 F. Supp. 1127, 1136 (M.D. Tenn. 1997) (considering argument that the TCC Act violates the Supremacy Clause of the United States Constitution to be "without merit" based on Sixth Circuit precedent).

13

The Court is bound to follow binding Sixth Circuit precedent, which indicates that filing with the TCC waives corresponding federal causes of action. Therefore, the Court finds that, by filing with the TCC, Plaintiffs have waived their ability to pursue their ERISA claims in federal court.

3. *Equitable relief*

Though neither party[11] briefed the significance here, if any, of the distinction between monetary (legal) relief versus equitable relief, the Sixth Circuit has explained that (in the context of the similar Ohio statute and claims commission) equitable relief in federal court is not waived by filing with a claims commission:

> [Plaintiff's] equitable claims survive regardless of whether they are "based on the same act or omission."
>
> The district court originally denied the defendants' motion to dismiss [Plaintiff's] claims seeking declaratory and injunctive relief against the defendants in their official capacities, invoking the longstanding doctrine of *Ex parte Young*. *Order Granting in Part and Denying in Part Defendants' Motion for Partial Dismissal,* June 8, 1992, at 4–6. In *Young,* the Supreme Court held that the Eleventh Amendment's jurisdictional bar to suits against states in federal court does not apply to an action to enjoin a state official from violating federal law. 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714. The Court reasoned that an official cannot be acting on behalf of the state when she acts illegally or unconstitutionally, and therefore is not entitled to the state's immunity. *Id.*
>
> The Court clarified the scope of the doctrine in *Edelman v. Jordan,* 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974), where it held that the Eleventh Amendment prohibited retroactive relief, but allowed prospective relief compelling a state officer's compliance with federal law.[6] Thus, whether a plaintiff characterizes his suit as being in law or in equity is not dispositive, nor is whether the state is a named party in the suit. *Id.* at 666, 94 S. Ct. at 1357. Rather, the Court looked at the bottom line: whether the suit would "impose a liability which must be paid from public funds in the state treasury." *Id.* at 663, 94 S. Ct. at 1356. Prospective relief which has an incidental or ancillary effect on the state treasury will be allowed. *Id.* at 668, 94 S. Ct. at 1358; *see Quern v. Jordan,* 440 U.S. 332,

---

[11] Though not making the argument the Court refutes herein, Plaintiffs do indicate (without a supporting citation) at times throughout the Response that there should be different treatment for a subsequent "in rem" proceeding. (Doc. No. 76).

14

> 347–49, 99 S. Ct. 1139, 1148–49, 59 L.Ed.2d 358 (1979) (requiring state to notify class members that it had acted illegally and inform them of administrative remedies was relief ancillary to injunction); *Doe v. Wigginton,* 21 F.3d 733, 737 (6th Cir.1994)
>
> However, in this case, [Plaintiff's] claims for prospective relief do not pose a threat to Ohio's coffers, and thus fall squarely under the rule of *Young*. Any expense of implementing the requested relief would be minimal and ancillary to the main purpose and effect of [Plaintiff's] suit—eliminating all negative entries in his personnel record and reinstatement and support as a researcher.
>
> Equitable claims of this sort are not waived by filing suit in the Court of Claims for several reasons. First, the *quid pro quo* rationale of *Leaman* is inapplicable where Ohio has no Eleventh Amendment immunity to trade for a plaintiff's surrender of his rights against state employees: Thomson always had the ability to proceed against the defendants pursuant to *Young,* so the state has offered no consideration for his waiver. Second, the incentive of access to the sovereign's deep pockets does not exist where money damages are not sought. Instead, Thomson is merely asking that if he prevails on the merits, the state must fulfill, through its employees, its pre-existing legal duty to comply with federal law. *Young* and *Edelman* makes clear that a state has no interest in shielding its servants from such an order.
>
> Third, the bargain analysis of *Leaman* is further undermined by the Court of Claims's inability to grant any relief other than money damages. Thus, a party must choose between seeking equitable relief in the Ohio Court of Common Pleas or suing for monetary damages in the Court of Claims, a tradeoff and waiver not contemplated in *Leaman.*
>
> Finally, this circuit does not require waiver of equitable claims in federal court actions. As stated by the court in *Leaman*—"when one remembers that Ms. Leaman was *not* required to give up her right to seek reinstatement through an injunction ... it is hard for us to see how the state could possibly be ... guilty of overreaching." 825 F.2d at 955.

*Thomson v. Harmony*, 65 F.3d 1314, 1320–21 (6th Cir. 1995); *see also Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 459–60 (6th Cir. 1998) (discussing *Thomson*); *Gunasekera v. Irwin*, 517 F. Supp. 2d 999, 1005 (S.D. Ohio 2007), *aff'd in part, rev'd in part*, 551 F.3d 461 (6th Cir. 2009); *Dettling v. Adams*, 575 F. Supp. 2d 842, 844 (N.D. Ohio 2008).

Though presented as a count for declaratory relief in the Complaint, the Court finds that Plaintiffs are really seeking monetary damages by their request for a declaration. As noted in the

Factual Background section, Plaintiffs state that after the Court determines that the account is an ERISA account, "Plaintiffs [would] seek entry of an order compelling that the state court Receiver deposit with the Trustee of the plan the entirety of the fund of $646,027.74, to be placed in a FDIC insured bank so that it may be administered for the benefit of the plan beneficiaries." (Doc. No. 10 at 1).

> The Supreme Court has found that:
>
> Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Bowen v. Massachusetts*, 487 U.S. 879, 918–919, 108 S. Ct. 2722, 101 L.Ed.2d 749 (1988) (SCALIA, J., dissenting). And "[m]oney damages are, of course, the classic form of legal relief." *Mertens*, supra, at 255, 113 S. Ct. 2063.

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S. Ct. 708, 713, 151 L. Ed. 2d 635 (2002); *Alexander v. Bosch Auto. Sys., Inc.*, 232 F. App'x 491, 501 (6th Cir. 2007). Here, granting the declaration would not serve merely to declare Plaintiffs' rights or clarify the legal relations between Plaintiffs and Defendants, but rather would have a significant monetary effect on the State coffers.[12] After all, expressly "in furtherance of" their requested declaration, Plaintiffs seek an award of damages, penalties and sanctions. (Doc. No. 1 at 10).

Plaintiff's prayer for declaratory relief is merely a prelude to a claim for damages, and thus, the controversy is legal not equitable." *Yoon v. Fordham Univ. Fac. & Adminstration Ret. Plan*, No. 99 CIV.11042 RCC, 2004 WL 3019500, at *13 (S.D.N.Y. Dec. 29, 2004), *aff'd sub nom. Yoon v. Fordham Univ. Fac.*, 173 F. App'x 936 (2d Cir. 2006)

---

[12] Plaintiffs argue that "the present 'in rem' request for the Court's determination of the viability of the ERISA plan and entitlement to its fund in no way involves seeking 'monetary relief' against the State. This ERISA monetary fund, without serious question, presently 'belongs' to – is 'owned by' the Plan Participants." (Doc. No. 76 at 8). Despite this statement by Plaintiffs in the Response, it is clear from the Complaint that Plaintiffs intend to request money from the State.

Therefore, the Court finds that Plaintiffs' remaining claim is waived despite being framed in terms of declaratory relief, as it ultimately is legal rather than equitable in nature.

4. *Discretion to deny declaratory relief*

In the alternative to finding that the claim has been waived because Plaintiffs proceeded before the TCC, the Court would exercise its discretion to deny declaratory relief. *Savoie v. Martin*, 673 F.3d 488, 495 (6th Cir. 2012) (noting abuse of discretion as the proper standard); *Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*, No. 3:17-CV-01158, 2020 WL 606592, at *8 (M.D. Tenn. Feb. 7, 2020) ("A declaratory judgment is quintessentially a remedy within the district court's discretion . . . Discretion not to hear a declaratory judgment action, even where jurisdiction exists, is undisputed. Where a court has the power to grant declaratory relief as to an actual controversy, the court nevertheless retains discretion to deny such relief." (citation omitted)); *Doe #1 v. Lee*, No. 3:16-CV-02862, 2021 WL 1264433, at *3 (M.D. Tenn. Apr. 5, 2021) (Richardson, J.).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). The Supreme Court has held that the Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). When determining whether a district court has properly exercised

17

its discretion under the Declaratory Judgment Act, the Court of Appeals usually considers five factors:[13]

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Doe v. Vanderbilt Univ.*, No. 3:18-CV-00569, 2019 WL 4748310, at *11 (M.D. Tenn. Sept. 30, 2019) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)). Neither party has briefed these factors for the Court. The first two factors weigh in favor of granting

---

[13] The undersigned here will reiterate what he has said previously about multi-factor tests generally:

> "The undersigned has noted on multiple occasions that multi-factor (or balancing) tests, though often having considerable desirability and merit, tend to foster outcomes that are unpredictable on the front end, given such tests' subjectivity." *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 5095459, at *16 (M.D. Tenn. Aug. 28, 2020) (quoting Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1050 (1997) (proposing a multi-factor test to resolve civil limitations issues, while conceding that when courts "apply[ ] a multi-factor test, [it is] always an unpredictable endeavor") and Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 95 (1995) (proposing multi-factor test to resolve collateral estoppel issues, while conceding that its drawback is that it "would produce unpredictable resolutions of collateral estoppel issues, in that it is so flexible and calls for very subjective judicial determinations")). This reality tends not to bode well for the prospects of a multi-factor test to resolve a question as a matter of law at the summary judgment stage.

*Acosta v. Peregrino*, No. 3:17-CV-01381, 2020 WL 5995049, at *6 (M.D. Tenn. Oct. 9, 2020) (Richardson, J.).

declaratory relief. The third factor does not appear to be relevant. However, because of the existence of the TCC, the final two factors weigh strongly in favor of the Court not exercising its discretion to issue declaratory relief in this matter. Granting a declaration in this matter would likely increase friction between the federal and state governments, and potentially could (as far as the Court can tell from the record) infringe on a previous TCC decision. Though the TCC did not have the ability to hear the ERISA claim, the TCC did have the ability to grant monetary damages to Plaintiffs (a trade-off Plaintiffs chose to make, as discussed above).

Therefore, in the alternative, the Court would not exercise its discretion to issue a declaration in this case, even if it had the jurisdiction to do so. In other words, the Court alternatively would dismiss the claim without prejudice based on such exercise of discretion. *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178-BBC, 2012 WL 5943791, at *1 (W.D. Wis. Nov. 28, 2012) ("[W]hen courts decline to exercise discretionary jurisdiction or reach the merits of a declaratory judgment claim, they usually dismiss the claim without prejudice.") (collecting cases).

5. *Fairness*

Without specifically invoking due process, Plaintiffs repeatedly mention fairness and their belief that it is unfair for their ERISA claim to be deemed waived due to their proceeding before the TCC. (Doc. No. 76). The undersigned has previously explained that:

> Plaintiff had a choice—she could file her claims in federal court or in the TCC. The waiver provision does not violate her individual rights because she had an option not otherwise available to her (bringing a claim against the State before the TCC), and if she did not like the statutory option, she was perfectly free to reject it and pursue only her Section 1983 action against the state officials. *Mullins*, 2011 WL 2618557 at * 3 (citing *In re Drew*, 1997 WL 441752 at * 3 (6th Cir. Aug. 5. 1997) ). Tennessee may legally require a plaintiff to choose between the administrative proceeding provided by the Claims Commission and a lawsuit in federal court. *In re Drew*, 1997 WL 441752 at * 3 (citing *White*, 860 F.2d at 663-664).

19

*Setayesh*, 2019 WL 1460882, at *5. In *Laude*, the plaintiff also argued that enforcement of a claims commission waiver was "fundamentally unfair . . . implying, it appears, that the statute as applied here would violate the Due Process Clause." *Laude*, 549 F. App'x at 314. The Sixth Circuit rejected the plaintiff's fairness argument, explaining that:

> [N]o one forced [plaintiff] to file his claim with the Commission. And the statute's terms allow a plaintiff to sue "an otherwise unavailable deep-pocket defendant"—namely, the state—only if the plaintiff "voluntarily elect[s] to waive suit against the employees[.]" *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 953 (6th Cir.1987) (en banc). It is not unfair in any constitutional sense to hold [plaintiff] to that statutory bargain.

*Id.*

Therefore, the Court is unpersuaded by Plaintiffs' general arguments about fairness because Plaintiffs made the decision to proceed before the TCC and seek a remedy they otherwise would been unable to seek.

## CONCLUSION

For the reasons discussed herein, the Court will grant the Motion and dismiss Plaintiffs' sole remaining claim without prejudice. [14]

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[14] In light of its resolution of the Motion based on the reasons discussed herein, the Court need not and does not reach several of Defendants' other arguments, such as their disputing that Dan Hale has appropriately brought this action as a trustee and that the Attorney General is an appropriate Defendant in this action. (Doc. Nos. 73, 77).